IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MICHAEL RUSSELL                                                                          PLAINTIFF

V.                                                   CIVIL ACTION NO. 1:20-CV-3-SA-DAS

CITY OF TUPELO, MISSISSIPPI, et al.                                     DEFENDANTS

ORDER

On June 16, 2021, the Court issued an Order and Memorandum Opinion [87] ruling on the Defendants' Motion for Summary Judgment [68]. In its Order and Memorandum Opinion [87], the Court granted qualified immunity in favor of Defendants, Chief Bart Aguirre and Deputy Chief Allan Gilbert, and therefore dismissed all federal claims asserted against them. [87] at p. 31. The Court denied summary judgment on the federal claims asserted against the City of Tupelo. *Id*. The Court also dismissed the state law tortious interference with contractual relations claim asserted against Deputy Chief Gilbert based upon the statute of limitations. *Id*. at p. 29-31.

On June 18, 2021, Russell filed a Motion for Reconsideration [89]. The Motion [89] does not concern the Court's ruling on the federal claims but, rather, only addresses the Court's grant of summary judgment on the state law claim. The Motion [89] has been fully briefed and is ripe for review.

*Reconsideration Standard*

Rule 54(b) of the Federal Rules of Civil Procedure provides, in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties *and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities*.

FED. R. CIV. P. 54(b) (emphasis added).

The Fifth Circuit has previously held that "when a district court rules on an interlocutory order, it is 'free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Saqui v. Pride Central America, LLC*, 595 F.3d 206, 210-11 (5th Cir. 2010) (citations omitted); *see also*, *e.g.*, *Carl E. Woodward, LLC v. Acceptance Indem. Ins. Co.*, 2012 WL 725938, at *2 (S.D. Miss. Mar. 5, 2012) (recognizing district court's authority to reconsider previous ruling in this context).

*Analysis and Discussion*

The Court begins with its Order and Memorandum Opinion [87]. There, the Court, relying in large part on *Black v. Ansah*, 876 So.2d 395 (Miss. Ct. App. 2003), held that the one-year statute of limitations was applicable, rendering Russell's state law claim for tortious interference with contractual relations untimely because it was not filed within one year of the allegedly wrongful conduct.

Although *Black* has not been expressly overruled, Russell, in the present Motion [89], cites more recent cases wherein Mississippi courts have held that state law claims against individuals for tortious interference with contractual relations fall outside the scope of the Mississippi Tort Claims Act. *See*, *e.g.*, *Jones v. Miss. Institutions of Higher Learning*, 264 So.3d 9, 33 (Miss. Ct. App. 2018) (noting that a tortious interference claim "is not subject to the MTCA.") (citing *Springer v. Ausbern Constr. Co.*, 231 So.3d 980, 989 (Miss. 2017)) (additional citations omitted). Russell also cited other cases for the same proposition. Furthermore, although the Defendants urged the Court to apply the one-year statute of limitations in their initial Motion [68], Deputy Chief Gilbert, in his present Response Memorandum [103], "concedes that the three year statute of limitations applies to Russell's tortious interference claim, although the Mississippi Court of

2

Appeals and Supreme Courts' decisions present a disjointed and peripatetic approach to this tort and the applicable statute of limitations." [103] at p. 3. Having reviewed the applicable authorities Russell cites, the Court finds Russell's arguments as to the applicability of a three-year statute of limitations to be well-taken. The Court will apply the three-year statute of limitations, and it therefore finds that Russell's state law claim against Deputy Chief Gilbert is not time-barred.[1] Therefore, to the extent that Russell's Motion [89] requests that the Court reconsider its ruling on the statute of limitations issue, the Motion [89] is GRANTED.

Having found that the claim is not time-barred, the Court finds it appropriate to take up Deputy Chief Gilbert's initial request for summary judgment on the claim. The Court does so because, in granting summary judgment on statute of limitations grounds, it did not reach the merits of the Defendants' request for summary judgment in its Order and Memorandum Opinion [87].

    *A.    Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

---

[1] Deputy Chief Gilbert contends that Russell waived his right to argue that a three-year statute of limitations, as opposed to the one-year statute of limitations found in the MTCA, is applicable. Russell clearly argued in favor of a three-year statute of limitations in his Response Memorandum [75] to the Motion for Summary Judgment [68]. Consequently, the Court rejects this assertion.

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Management of Louisiana, LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

    B.    *Summary Judgment Analysis*

"Mississippi law recognizes a claim for interference 'with the performance of a contract between another and a third party' by one 'who intentionally and improperly interferes,' and this interference causes 'the third party not to perform.'" *Jones v. Mullen*, 100 So.3d 490, 497 (Miss. Ct. App. 2012) (quoting *Morrison v. Miss. Enter. for Tech., Inc.*, 798 So.2d 567, 574 (Miss. Ct. App. 2011)) (additional citation omitted). In order to prevail on a claim for tortious interference with contractual relations, the plaintiff must establish the following elements:

> 1. that the acts were intentional and willful; 2. that they were calculated to cause damage to the plaintiffs in their lawful business; 3. that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and 4. that actual damage and loss resulted.

4

*Rex Distributing Co., Inc. v. Anheuser-Busch, LLC*, 271 So.3d 445, 452-53 (Miss. 2019) (quoting *Cenac v. Murry*, 609 So.2d 1257, 1268-69 (Miss. 1992)). Despite these elements, it must also be noted that "[o]ne occupying a position of responsibility on behalf of another is privileged to interfere with his principal's contractual relationship with a third person, as long as [he] is acting within the scope of that responsibility and absent bad faith." *Jones*, 100 So.3d at 497-98 (quoting *Shaw v. Burchfield*, 481 So.2d 247, 254-55 (Miss. 1985)) (internal quotation marks omitted); *see also Jones v. Gulf Coast Restaurant Group Inc.*, 2021 WL 232127, at *5 (S.D. Miss. Jan. 22, 2021). On this point, the Mississippi Court of Appeals has held that a person who occupies a position of responsibility as to the plaintiff's employment enjoys this privilege "unless [the actions] were taken in bad faith." *Morrison v. Miss. Enterprise for Tech., Inc.*, 798 So.2d 567, 574 (Miss. Ct. App. 2001). In other words, the privilege only applies when the superior is acting "within the scope of that responsibility and absent bad faith." *Dearman v. Stone Cnty. Sch. Dist.*, 2014 WL 1153068, at *8 (S.D. Miss. Mar. 21, 2014)

Relying on this authority, Deputy Chief Gilbert argues that he was privileged to interfere with the employment relationship and therefore cannot be held liable for tortious interference with contractual relations. Russell contends that the privilege is inapplicable because Deputy Chief Gilbert was acting in bad faith when he committed the underlying conduct.[2]

Russell points to various pieces of evidence which he contends are sufficient to establish, at the very least, a jury question as to whether Deputy Chief Gilbert acted in bad faith. First, Russell contends that Deputy Chief Gilbert has harbored animosity toward Russell for many years:

> This animosity is well-documented. The animosity started at the beginning of Defendant Gilbert's and Russell's careers. Defendant

---

[2] Although a plaintiff pursuing a tortious interference with contractual relations claim undoubtedly must establish the four elements of the claim quoted above, Deputy Chief Gilbert, in his request for summary judgment, focused on the applicability of the privilege exception. The Court will only address the arguments raised by Deputy Chief Gilbert.

5

> Gilbert had pressured former Police Chief Harold Chaffin not [to] allow Russell to transfer from Patrol back to the Special Operations Unit, and then lied about having done so. Deposition of Michael Russell, pp. 62-63, Exhibit "A"; Deposition of Anthony Hill, pp. 10-11, Exhibit "B." Defendant Gilbert had then threatened Russell, telling him that one day Russell would "absolutely regret" his having confronted Defendant Gilbert about lying. Deposition of Michael Russell, p. 65, Exhibit "A." From that time forward, every contact between Russell and Defendant Gilbert was conniving. Deposition of Michael Russell, p. 64, Exhibit "A."

[107] at p. 4.

Russell next contends that on one occasion Deputy Chief Gilbert denied his request for compensatory time that he had spent at a national PAL conference "and then lied to Russell by falsely claiming that his compensation time was denied by Defendant City of Tupelo's Finance Director Kim Hanna[.]" [107] at p. 5.

He also emphasizes a portion of the deposition of another Police Department employee, Major Anthony Hill. In pertinent part, Major Hill testified as follows:

> Q. Did you ever have occasion to see anything to indicate to you that Gilbert didn't want Michael over in PAL or wanted to minimize his time over there?
>
> A. Well, I constantly got questioned about his hours and activities at PAL. I can't directly say that it was to get him out of PAL, but there was always questions about hours and work and hours and work, back and forth.
>
> Q. By Gilbert or by whom?
>
> A. By Gilbert.
>
> Q. Is Gilbert the only one? Is he the only person that seemed not to want or to question what he was doing at PAL?
>
> A. Oh, yes, sir.
>
> Q. Did Gilbert have – from your observations, did Gilbert have something against PAL or something against Michael or both or what was it?

6

>   A. I've really never been able to figure that out. I don't know if it was PAL or it could have been – *I think it was both*.

[105], Ex. B at p. 11 (emphasis added).

Additionally, Russell notes that another employee, Lynette Sandlin, testified in her deposition that Deputy Chief Gilbert "wanted to open an internal investigation against Russell because he thought some suspicious activity was going on at the PAL building[.]" [105], Ex. E at p. 6. Russell makes two additional points to support his bad faith argument:

> After Russell was in the Patrol lieutenant's position, Defendant Gilbert vetoed Russell's discipline of a subordinate officer. When Russell attempted to talk with Defendant Gilbert about disciplining the officer, Defendant Gilbert relayed, through Major Jackie Clayton, that he (Gilbert) did not "have to talk to [Russell] about anything ever." Deposition of Michael Russell, pp. 137-39, Exhibit "A."
>
> According to Russell, Patrol Captain Tim Bell stated that every time Russell wanted to work at PAL, it "pisses Allan [Gilbert] off." Deposition of Michael Russell, p. 114, Exhibit "A."

[107] at p. 5.

In response, the Defendants argue that Russell "wrongly attributes the transfer decision to Gilbert, a decision which clearly forms the backbone of his claim that he was 'constructively discharged' and thereby damaged. Even if Gilbert had made this decision, the proof does not show that Gilbert exceeded his privilege, that Russell was 'constructively discharged,' or that Gilbert's (not other City employees) actions served as the 'but for' of the discharge." [103] at p. 7.

While the Court recognizes the arguments the Defendants have raised, "[a]t the summary judgment stage, the Court's function is not to resolve factual disputes but, rather, simply determine if such disputes exist." *Grattafiori v. Thompson*, 2017 WL 2964059, at *3 (N.D. Miss. May 16, 2017) (quoting *Kinsella v. OfficeMax, Inc.*, 2017 WL 1274054, at *4 (N.D. Miss. Apr. 3, 2017))

7

(additional citations omitted). And ultimately, "bad faith raises an issue of motive. It is not necessary for direct evidence to exist, such as an admission by the defendant that he acted in bad faith. Instead, such a conclusion generally arises as an inference from other evidence." *Dearman*, 2014 WL 1153068 at *9 (quoting *Morrison*, 798 So.2d at 575). Here, although there is no direct evidence of bad faith, the Court, having considered the evidence set forth above and viewing it in the light most favorable to Russell, finds that there is sufficient circumstantial evidence to create a genuine issue of material fact on Russell's tortious interference with contractual relations claim. Summary judgment is therefore not appropriate on that claim.

*Conclusion*

For the reasons set forth above, Russell's Motion for Reconsideration [89] is GRANTED. Russell's state law claim for tortious interference with contractual relations against Deputy Chief Gilbert is not time-barred. Furthermore, Russell has come forward with sufficient evidence to create a genuine issue of material fact on that claim. He will be permitted to proceed to trial on his tortious interference with contractual relations claim.

SO ORDERED, this the 26th day of October, 2021.

/s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE